UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEE A. WEBSTER,<br><br>                    Plaintiff,<br><br>        v.<br><br>J. J. LOOK,<br><br>                    Defendant. | No.  2:22-cv-01010 DB P<br><br><br>ORDER |

Plaintiff, a state prisoner, proceeds without counsel and seeks relief under 42 U.S.C. § 1983. This matter was referred to the undersigned by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1). Plaintiff's complaint filed on June 10, 2022 (ECF No. 1) is before the court for screening. For the reasons set forth below, the complaint's allegations fail to state a claim. Plaintiff will be granted leave to file an amended complaint.

**I.        In Forma Pauperis**

Plaintiff seeks to proceed in forma pauperis. (ECF No. 4.) Plaintiff's declaration motion makes the showing required by 28 U.S.C. § 1915(a). The motion will be granted.

Plaintiff is required to pay the statutory filing fee of $350.00 for this action. 28 U.S.C. §§ 1914(a), 1915(b)(1). By separate order, plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). The order will direct the appropriate

1

1 agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the
2 Clerk of the Court. Thereafter, plaintiff will be obligated to make monthly payments of 20% of
3 the preceding month's income credited to plaintiff's prison trust account. These payments will be
4 forwarded by the appropriate agency to the Clerk of the Court each time the amount in plaintiff's
5 account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

6 **II.     Screening Requirement**

7 The court is required to screen complaints brought by prisoners seeking relief against a
8 governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The
9 court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally
10 "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek
11 monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).
12 A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v.
13 Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir.
14 1984). The court may dismiss a claim as frivolous if it is based on an indisputably meritless legal
15 theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical
16 inquiry is whether a constitutional claim has an arguable legal and factual basis. See Jackson v.
17 Arizona, 885 F.2d 639, 640 (9th Cir. 1989); Franklin, 745 F.2d at 1227.

18 Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a short and plain statement
19 of the claim that shows the pleader is entitled to relief. Bell Atlantic Corp. v. Twombly, 550 U.S.
20 544, 555 (2007). In order to state a cognizable claim, a complaint must contain more than "a
21 formulaic recitation of the elements of a cause of action;" it must contain factual allegations
22 sufficient "to raise a right to relief above the speculative level." Id., 550 U.S. at 555. The facts
23 alleged must "'give the defendant fair notice of what the... claim is and the grounds upon which it
24 rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atlantic, 550 U.S. at 555). In
25 reviewing a complaint under this standard, the court accepts as true the allegations of the
26 complaint and construes the pleading in the light most favorable to the plaintiff. See id.; Scheuer
27 v. Rhodes, 416 U.S. 232, 236 (1974).
28 ////

### III. Allegations in the Complaint

In December of 2020, COVID-19 was spreading at Deuel Vocational Institution ("DVI"). (ECF No. 1 at 4.) Plaintiff was housed in the L2 housing unit. (Id.) After a COVID-19 outbreak occurred in the L3 housing unit, inmates from that unit were transferred to L1 housing unit (medical isolation). (Id.) About three days later, DVI's administration began to move inmates out of L1 housing unit into the L2 housing unit where plaintiff was housed. (Id.)

An unknown correctional officer approached plaintiff's cell and informed plaintiff an inmate was moving in the cell. (ECF No. 1 at 4.) At that time, inmates were refusing to be housed with inmates coming out of the medical isolation unit, and so the correctional officer inquired whether plaintiff would accept an inmate in the cell. (Id.) The correctional officer warned all inmates housed in L2 that according to Sgt. Look "[w]hoever refused an inmate to move into their cell would receive a serious rule violation report (i.e., RVR 115." (Id.) For that reason, plaintiff did not refuse an inmate coming in the cell. (Id.)

Plaintiff's new cellmate, Blackwell, told plaintiff he had been housed in L1 for three days, in close contact with inmates who had received a positive COVID-19 laboratory test, before DVI's administration moved him into the cell with plaintiff. (ECF No. 1 at 5.) Blackwell told plaintiff he was not tested for COVID-19 prior to moving into the cell with plaintiff. (Id.) Plaintiff raised his concerns directly to Sgt. Look about Blackwell's exposure to inmates in L1 and Sgt. Look responded, "Everyone in L2 (Plaintiff's housing unit) was going to allow another inmate into their cell, or they will get a 115." (Id. at 5.)

When, subsequently, plaintiff's entire housing unit was tested, Blackwell tested positive for COVID-19 and was moved from plaintiff's cell. (ECF No. 1 at 5.) Plaintiff was moved to E-wing (medical isolation unit) and, two days after that, received a positive result from a COVID-19 laboratory test. (Id.) Plaintiff became ill and remained in E-wing for approximately 10 to 12 days before he was moved to F-wing. (Id.) Plaintiff then filed his inmate grievance. (Id.)

Plaintiff alleges Sgt. Look's conduct placed him in direct risk of an infectious disease. (ECF No. 1 at 5.) He seeks monetary damages. (Id. at 10.)

////

### IV. Discussion

#### A. Eighth Amendment

The crux of plaintiff's complaint is that he was assigned a cell mate who had been in close contact with inmates who had COVID-19. In order to state a cognizable Eighth Amendment claim on these facts, the complaint must plausibly allege that, objectively, plaintiff suffered a serious deprivation and, subjectively, Sgt. Look acted with deliberate indifference in allowing or causing the deprivation to occur. See Wilson v. Seiter, 501 U.S. 294, 298-99 (1991).

Prison officials have a duty "to take reasonable measures to guarantee the safety of inmates[.]" Labatad v. Corrections Corp. of America, 714 F.3d 1155, 1160 (9th Cir. 2013) (citing Farmer v. Brennan, 511 U.S. 825, 832-33 (1994) and Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005)). To establish a violation of this duty, a prisoner must "show that the officials acted with deliberate indifference to threat of serious harm or injury to an inmate." Id. at 1160 (citing Gibson v. County of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002)).

To prove the objective component, an inmate must establish there was some degree of actual or potential injury, and that society considers the risk to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. Helling v. McKinney, 509 U.S. 25, 36 (1993). As to the subjective component, "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment" and thus the defendant must have acted with a "sufficiently culpable state of mind." Wilson, 501 U.S. at 297 (internal quotations marks, emphasis, and citations omitted). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, ... and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842.

Relevant here, the risks associated with COVID-19 can constitute a sufficiently serious risk under the Eighth Amendment to satisfy the objective component of an Eighth Amendment claim. However, the complaint's current allegations fall short of stating a cognizable claim against Sgt. Look.

////

4

Plaintiff informed Sgt. Look he was concerned his new cell mate had "been in L1 (medical isolation unit) with inmates [who] were confirmed cases," and Sgt. Look responded that everyone in plaintiff's housing unit "going to allow another inmate into their cell, or they will get a 115." (ECF No. 1 at 5.) This conduct by itself falls short of plausibly suggesting Sgt. Look acted with a sufficiently culpable state of mind to an obvious risk to plaintiff. To be held liable for plaintiff's injuries under the Eighth Amendment, plaintiff must adequately allege facts demonstrating how Sgt. Look played a personal role in causing the harm suffered and that he acted with deliberate indifference to a serious risk to plaintiff's health or safety. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Under the facts alleged, Sgt. Look did not knowingly place a COVID-positive cell mate with plaintiff. Instead, the new cell mate had not been tested. Separately, there is no indication Sgt. Look was aware of any facts suggesting plaintiff had any underlying medical conditions rendering him particularly vulnerable. Sgt. Look is also not alleged to have made the decision to move inmates out of L1 housing unit into the L2 housing unit where plaintiff was housed. Instead, DVI administration, and not Sgt. Look, is alleged to be responsible for that decision. To the extent Sgt. Look had a supervisory role as a correctional sergeant, that status, by itself, is not adequate to show his personal participation in the alleged deprivation of rights. See Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Under the facts alleged, there is no indication Sgt. Look had discretion or authority to address the situation encountered any differently. The facts alleged show a "mere possibility of misconduct," which falls short of meeting the plausibility standard for pleading a § 1983 claim. See Iqbal, 556 U.S. at 678.

Plaintiff's relaying of his concerns to Sgt. Look and Sgt. Look's response that inmates refusing cell mates would be issued "a 115" does not suffice to show Sgt. Look played a personal role in causing the harm plaintiff suffered and that he acted with deliberate indifference to a serious risk to plaintiff's health or safety. See Hines v. Youseff, 914 F.3d 1218, 1228 (9th Cir. 2019) (defendant who had no discretion or authority relating to the alleged conduct could not be held liable under the Eighth Amendment because "[a]n official is liable under § 1983 only if

'culpable action, or inaction, is directly attributed to them.'"). As currently pleaded, the complaint fails to state a claim. See, e.g., Swan v. R.J. Donovan C.F., No. 21-CV-1455 JLS (MDD), 2022 WL 2134605, at *1 (S.D. Cal. June 14, 2022) (no claim stated where the plaintiff failed to allege facts to plausibly show either defendant was personally aware of the plaintiff's medical vulnerabilities or responsible for the decision to house him with a cell mate they knew had tested positive for coronavirus).

**V.      Conclusion and Order**

The complaint fails to state a cognizable claim, but plaintiff is granted leave to file an amended complaint. See Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). This opportunity to amend is not for the purpose of adding new claims. See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints). Instead, plaintiff should focus efforts on curing deficiencies of the claim already set forth. An amended complaint supersedes the prior complaint, see Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967), and must be "complete in itself without reference to the prior or superseded pleading," E.D. Cal. Local Rule 220.

In the alternative, plaintiff may notify the court he wishes to stand on the complaint as currently pleaded. See Edwards v. Marin Park, Inc., 356 F.3d 1058, 1064-65 (9th Cir. 2004). If plaintiff chooses to stand on the complaint, the undersigned will issue findings and recommendations to dismiss the complaint without further leave to amend, after which plaintiff will be granted an opportunity to file objections, and then a district judge will determine whether the complaint states a cognizable claim.

In the further alternative, if plaintiff does not wish to pursue his claims further, plaintiff may file a notice of voluntary dismissal. A notice of voluntary dismissal will terminate this action by operation of law.

**VI.     Order**

In accordance with the above, IT IS HEREBY ORDERED:

1. Plaintiff's motion to proceed in forma pauperis (ECF No. 4) is granted.

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action as set forth by separate order.

3. The Clerk's Office shall send plaintiff a blank civil rights complaint form.

4. Within thirty days from the date of service of this order, plaintiff must file one of the following:

    a. An amended complaint curing the deficiencies identified in this order;

    b. A notice of election to stand on the complaint as filed; or

    c. A notice of voluntary dismissal.

5. Failure to respond to this order will result in a recommendation that this action be dismissed for failure to obey a court order and failure to prosecute.

Dated: December 22, 2022

DLB7
webs1010.scrn

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE