UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WEBSTER LEE,<br><br>        Plaintiff,<br><br>    v.<br><br>J.J. LOOK,<br><br>        Defendant. | No. 2:22-cv-01010 DB P<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Plaintiff, a state prisoner proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983. This matter was referred to the undersigned by Local Rule 302. See 28 U.S.C. § 636(b)(1). Defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is before the court. (ECF No. 26.) The undersigned recommends the motion to dismiss be granted because plaintiff failed to exhaust available administrative remedies before filing this suit.

**RELEVANT PROCEDURAL BACKGROUND**

Plaintiff initiated this action with a civil complaint filed on June 10, 2022. (ECF No 1.) On April 21, 2023, plaintiff filed the operative first amended complaint ("FAC"). (ECF No. 15.) On June 9, 2023, the court found service of the FAC appropriate and ordered that this case proceed on plaintiff's claim against Sgt. Look under the Eighth Amendment for deliberate indifference to plaintiff's health and safety.

1

1  On November 2, 2023, defendant filed the motion to dismiss presently before the court. (ECF No. 26.) Defendant's motion to dismiss asserts the following grounds for dismissal: (1) plaintiff fails to allege sufficient facts to state a claim under the Eighth Amendment; (2) defendant is entitled to qualified immunity; and (3) the FAC establishes plaintiff failed to properly exhaust administrative remedies before filing suit. (Id. at 1.)

On January 16, 2024, plaintiff requested a five-day extension of time to oppose the motion to dismiss. (ECF No. 29.) Plaintiff's request for an extension of time is granted. Plaintiff's opposition (ECF No. 30) is deemed timely filed. Defendant's reply in support of the motion to dismiss is also before the court. (ECF No. 31.)

## ALLEGATIONS IN THE PLAINTIFF'S FAC

In December of 2020, COVID-19 was spreading at Deuel Vocational Institution ("DVI"). (ECF No. 15 at 3.) Plaintiff was housed in the L2 housing unit. (Id.) After a COVID-19 outbreak occurred in the L3 housing unit, inmates from that unit were transferred to L1 housing unit (medical isolation). (Id.) Many inmates from an unknown location of DVI were then relocated to the isolation unit. (Id.) About three days later, DVI's administration began to move inmates out of L1 housing unit into the L2 housing unit where plaintiff was housed. (Id.) At the time, there were no confirmed COVID-19 cases in L2 unit. (Id.)

An unknown correctional officer approached plaintiff's cell and informed plaintiff an inmate from the isolation unit was moving in the cell. (ECF No. 15 at 4.) The correctional officer stated if plaintiff were to refuse to accept that inmate in his cell that per the order of Sgt. Look, "an inmate housed in L2 unit that refuse[d] to accept an inmate into his cell would receive a CDCF 115." (Id.) Plaintiff did not wish to receive a CDCR 115, so he did not refuse to accept an inmate in his cell. (Id.)

Inmate Blackwell moved into plaintiff's cell and informed plaintiff he had been housed in L1 for three days, in close contact with inmates who had received a positive COVID-19 confirmed cases, before he moved into the cell with plaintiff. (ECF No. 15 at 4.) Blackwell told plaintiff he had been in direct contact with infectious secretions from a COVID-19 confirmed

////

2

1  case (he had been coughed on). (Id.) Blackwell told plaintiff he was not tested for COVID-19

2  prior to moving into the cell with plaintiff. (Id.)

3      Plaintiff raised his concerns directly to Sgt. Look about Blackwell's direct exposure to

4  COVID-19 and the fact that Blackwell had not been tested for COVID-19 before moving into the

5  cell with plaintiff. (ECF No. 15 at 4-5.) Sgt. Look responded, "Everyone in L2 (Plaintiff's

6  housing unit) was going to allow another inmate into their cell, or they will get a 115." (Id. at 4-

7  5.) Sgt. Look "had vested autonomy to oversee all inmate housing movements[.]" (Id. at 6.)

8      Shortly after Blackwell moved into the L2 unit, the L2 housing unit was tested, and

9  Blackwell tested positive for COVID-19. (ECF No. 15 at 4.) Plaintiff was given a "rapid" 15-

10 minute COVID-19 test and moved to E-Wing's isolation unit. (Id. at 5) Two days after that,

11 plaintiff received a positive result from a COVID-19 laboratory test. (Id.) Plaintiff became ill and

12 remained in E-wing for approximately 10 to 12 days. (Id.)

13 **APPLICABLE STANDARD**

14     A motion to dismiss for failure to state a claim should not be granted unless it appears

15 beyond doubt that the plaintiff can prove no set of facts in support of the claims which would

16 entitle him to relief. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson,

17 355 U.S. 41, 45-46 (1957)). A dismissal may be warranted where there is "the lack of a

18 cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."

19 Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). In ruling on a motion to

20 dismiss pursuant to Rule 12(b)(6), the court may consider material that is properly submitted as

21 part of the complaint, matters properly subject to judicial notice, and documents that are not

22 physically attached to the complaint where their authenticity is not contested and the plaintiffs'

23 complaint relies on them. See Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007)); Lee v.

24 City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).

25 **DISCUSSION**

26     As to exhaustion, defendant argues plaintiff did not properly exhaust his claim against

27 defendant because the grievance did not name defendant and failed to provide adequate notice of

28 any claim against defendant. (ECF No. 26 at 21.) Defendant also argues plaintiff concedes on the

face of the FAC that administrative remedies were available but he nevertheless failed to pursue his grievance through the final level of review in order to complete the administrative process. (Id. at 22.) Considering defendant's second argument, the undersigned finds the FAC should be dismissed for plaintiff's failure to exhaust available administrative remedies which is clear from the face of the FAC.

### A. Exhaustion Requirement

The Prison Litigation Reform Act (PLRA) of 1995 requires that prisoners exhaust "such administrative remedies as are available" before commencing a suit challenging prison conditions. 42 U.S.C. § 1997e(a). This statutory exhaustion requirement applies to all inmate suits about prison life. Porter v. Nussle, 534 U.S. 516, 532 (2002).

In order to exhaust available administrative remedies, a prisoner must comply with the prison's procedural rules, including deadlines, as a necessary precondition to bringing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 90 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules."). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 219 (2007).

Regardless of the relief sought, a prisoner must pursue an appeal through all levels of a prison's grievance process as long as some remedy remains available. Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (alterations and italics in original) (citing Booth v. Churner, 532 U.S. 731 (2001)). The Supreme Court has identified three circumstances in which administrative remedies were unavailable: (1) where an administrative remedy "operates as a simple dead end" in which officers are "unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) where an administrative scheme is "incapable of use" because "no ordinary prisoner can discern or navigate it," and (3) where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Ross v. Blake, 578 U.S. 632, 643-44 (2016).

Since exhaustion is mandatory, unexhausted claims may not be brought to court. Jones, 549 U.S. at 211 (citing Porter, 534 U.S. at 524); see also Ross, 578 U.S. at 635 (reaffirming that

1  "special circumstances" do not excuse a failure to exhaust if remedies were available). If a
2  prisoner has not exhausted available administrative remedies before filing his federal suit, the
3  court must dismiss the action without prejudice. McKinney v. Carey, 311 F.3d 1198, 1200-01
4  (9th Cir. 2002) (per curiam).

5  Failure to exhaust is an affirmative defense which the defendant bears the burden of
6  raising and proving. Jones v. Bock, 549 U.S. 199, 216 (2007); Albino v. Baca, 747 F.3d 1162,
7  1166 (9th Cir. 2014). "In the rare event that a failure to exhaust is clear from the face of the
8  complaint, a defendant may move for dismissal under Rule 12(b)(6)." Albino, 747 F.3d at 1166;
9  see also McBride v. Lopez, 807 F.3d 982, 988 (9th Cir. 2015). Otherwise, a defendant must
10 produce evidence proving failure to exhaust. McBride, 807 F.3d at 985.

### B.    Failure to Exhaust is Clear on the Face of the FAC

In the FAC, plaintiff alleges he filed a grievance regarding his claim against defendant but acknowledges he did not appeal the grievance to the highest level of review. (ECF No. 15 at 3.) In addition, the FAC alleges as follows:

> Plaintiff initially presented his grievance by way of an "Inmate Appeal" (CDCR 602) and submitted it to the Appeals Coordinator on February 08, 2021. (See Exhibit A, attached hereto.) On February 10, 2021, the Office of Grievance (OOG) notified Plaintiff that his claim fell within the jurisdiction of the California Correctional Health Care Services (CCHCS) and that his claim was redirected to CCHCS. (See Exhibit B, attached hereto.) On February 16, 2021, the Health Care Grievance (CDCR 602 HC) was accepted and assigned to R. Shinh (HCARN). (See Exhibit C, attached hereto.) On April 01, 2021, Plaintiff received the Institutional level Response[.]

(Id. at 9.) In the Institutional Level Response, plaintiff's grievance was delineated as containing six issues, and the response determined no intervention was necessary. (Id.) Thereafter, plaintiff did not appeal the grievance response to the highest level of review. (Id.) In the FAC, plaintiff alleges the following regarding this omission:

> Plaintiff initially presented his grievance, via, an CDCR 602 -- not a CDCR 602 HC, for which he filed with the Appeal Coordinator. (See Exhibit A, attached hereto.) It was the OOG at DVI that informed Plaintiff that his claim falls within the jurisdiction of the CCHCS. Moreover, it was the OOG that redirected Plaintiff claim to the CCHCS. (See Exhibit B, attached hereto.) Plaintiff submits that because the administration directed Plaintiff to the jurisdiction of the

5

> CCHCS and the CCHCS directed Plaintiff to the jurisdiction of the administration, coupled with monetary compensation being Plaintiff main issue, for which is outside of both the health care grievance and the administrative grievance processes, Plaintiff resolved that an administrative remedy was unavailable. Therefore, Plaintiff presented his claim to the Government Claims Program (GCP). The GCP reject Plaintiff's claim[.]

(ECF No. 15 at 10.)

Construing the allegations in the light most favorable to plaintiff, Hishon, 467 U.S. at 73, it is clear plaintiff did not encounter any circumstances under which administrative remedies were unavailable. See Ross, 578 U.S. at 643-44. Instead, the FAC alleges plaintiff determined he did not have an available remedy because the grievance was redirected to CCHCS, which plaintiff alleges did not have the jurisdiction to address all issues in the grievance requested, and because neither OOG nor CCHCS had jurisdiction to award monetary compensation, which was his main issue. Thus, plaintiff alleges he sought a remedy or remedies that were unavailable and he concluded he was exempt from proper exhaustion. As set forth above, though, plaintiff was required to exhaust all administrative remedies so long as some remedy remained available. See Brown, 422 F.3d at 935 (holding the obligation to exhaust "available" remedies persists as long as some remedy remains available).

The re-direction of plaintiff's grievance to CCHCS did not thwart plaintiff from exhausting or otherwise render administrative remedies effectively unavailable. Compare McBride, 807 F.3d at 987 ("the threat of retaliation for reporting an incident can render the prison grievance process effectively unavailable"); Albino, 747 F.3d at 1177 (failure to inform a prisoner of the administrative appeals process following multiple requests for instruction rendered his administrative remedy effectively unavailable); Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) (a plaintiff is not required to exhaust further levels of review after being reliably informed by administrator that no further remedies are available). To the contrary, plaintiff still had an available remedy, and was so informed by the Institutional Level Response:

> If you are dissatisfied with the Institutional Level Response, follow the instructions on the CDCR 602 HC, Health Care Grievance, und submit the entire health care grievance package for headquarters' level review. The headquarters' level review constitutes the final

6

1
2
> disposition on your health care grievance and exhausts your administrative remedies.

3 (ECF No. 15 at 26.)

4 In opposition to the motion to dismiss, plaintiff states he "believed he could go no further
5 with the grievance process[,]" and therefore filed a government claim upon the suggestion of
6 another inmate. (ECF No. 30 at 13.) The filing of a government claim did not constitute proper
7 exhaustion. See Woodford v. Ngo, 548 U.S. at 90 ("Proper exhaustion demands compliance with
8 an agency's deadlines and other critical procedural rules."); Jones v. Bock, 549 U.S. at 219 ("[I]t
9 is the prison's requirements… that define the boundaries of proper exhaustion."). In order to
10 properly exhaust, plaintiff was required to pursue his grievance to the final level of appeal. See
11 Brown, 422 F.3d at 935.

12 Plaintiff also asks the court to consider the restricted inmate movement due to the
13 COVID-19 pandemic at the relevant time. (Id.) However, the United States Supreme Court has
14 made clear that "special circumstances" do not excuse a failure to exhaust if remedies were
15 available. See Ross, 578 U.S. at 635. Because proper exhaustion is mandatory, see id., the court
16 must dismiss this unexhausted action without prejudice. See McKinney, 311 F.3d at 1200-01.

17 **ORDER AND RECOMMENDATION**

18 The factual allegations explaining why plaintiff concluded he had no remedy appear on
19 the face of the FAC and demonstrate he failed to exhaust available administrative remedies.
20 Defendant's motion to dismiss should be granted on this ground. See Jones, 549 U.S. at 216;
21 Albino, 747 F.3d at 1166. Finding plaintiff failed to exhaust available administrative remedies,
22 the court need not take up defendant's alternate arguments that the complaint fails to state a claim
23 and that defendant is entitled to qualified immunity from suit on the claim for monetary damages.

24 In accordance with the above, IT IS ORDERED as follows:

25 1. The Clerk of the Court shall assign a district judge to this case.

26 2. Plaintiff's motion for a 5-day extension of time (ECF No. 29) to oppose the motion to
27 dismiss is GRANTED and the opposition is deemed timely filed.

28 ////

7

1  In addition, for the reasons set forth above, IT IS RECOMMENDED that defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) (ECF No. 26) be GRANTED on the ground that plaintiff failed to exhaust available administrative remedies.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 21 days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within 14 days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  April 26, 2024

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB7
webs1010.mtd